**SKINNER et al. v. EATON, Internal Revenue Collector.**

District Court, D. Connecticut. August 6, 1929.

No. 2978.

See, also, 34 F.(2d) 576.

Day, Berry & Reynolds, of Hartford, Conn. (Lawrence A. Howard, of Hartford, Conn., of counsel), for plaintiffs.

John Buckley, U. S. Atty., and John A. Danaher, Asst. U. S. Atty., both of Hartford, Conn., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Eldon O. Hanson, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for defendant.

BURROWS, District Judge. This action was commenced by the plaintiffs as executors under the will of William C. Skinner to recover $17,827.70, collected from the deceased as income taxes for the years 1917, 1918 and 1919. At the time of the trial, amendment was made increasing the claim to $30,000. Jury having been waived by stipulation in writing, the case was tried to the court.

The account of the decedent, Exhibit 1, shows that he purchased from 1901 to March 1, 1913, 3,760 shares of the Colt's Patent Fire Arms Manufacturing Company in nine different lots. During that period he sold 1,530 shares in forty-one different lots, so that on March 1, 1913, he held 2,230 shares. On that date the stock had a valuation of $178 a share. Between March 1, 1913, and April 2, 1917, the decedent purchased 387 shares in seven different lots, and during this period sold 1,477 shares in thirty different lots. On April 2, 1917, the Colt's Patent Fire Arms Manufacturing Company doubled its capital stock, declared a 100 per cent. stock dividend, and reduced its par value from $100 to $25 per share, and distributed to stockholders eight shares of new for one of old stock, so that for his 1,140 shares of old he was given 9,120 shares of new stock. The distribution was conducted through a transfer agent who did not retain the old certificates or keep any record of them, so that there is no way to identify any new certificates as having been issued for the old. After the distribution, and in 1917, 287 shares were sold; in 1918, 50 shares; and in 1919, 350 shares. On his return for 1917, the decedent reported a gain derived from the sale of 287 shares on the basis that the stock sold had been acquired prior to March 1, 1913, but reported his gain on sales in the years 1918 and 1919 on the basis that stock sold had been acquired after March 1, 1913.

Since the institution of this action, it has been found that the 50 shares sold during

1918 were purchased that year, and that the proper basis for computing gain derived is $56 per share instead of $22.25; that 100 of the shares sold during 1919 were purchased that year, and that the proper basis for determining gain is $36.50 per share instead of $22.25. The defendant therefore concedes that the plaintiff may take judgment for the amount of $1,587.84, together with interest at the rate of 6 per cent. per annum from March 10, 1925, being the amount refundable on the above basis.

The issue in this case is not especially difficult. Were the plaintiffs in position to prove from proper book entries the purchase price of the decedent's stock and the selling price, computation of gain or loss would automatically follow. The plaintiffs are unable and have been unable to establish the price at the time of acquisition of any of the stock sold, except in the instances conceded as above referred to. The plaintiffs would have the court compute profit and/or loss from an average cost basis. I am unable to subscribe to this theory. It seems to me that the burden was on the decedent to keep books in such fashion that his income could be determined. To meet the very situation which we have here, article 39 of Regulations 45, was promulgated, and is as follows:

"When the shares of stock in a corporation are sold from lots purchased at different times and at different prices and the identity of the lots cannot be determined, the stock sold shall be charged against the earliest purchase of such stock. The excess of the amount realized on the sale over the cost of the stock, or its fair market value as of March 1st, 1913, if purchased before that date, will be the profit to be accounted for as income. * * * *"

See, also, article 60 of Regulations 33.

I can see no reason why this provision is not decisive of the case. Since the decedent has been unable to identify the shares sold as the ones last acquired by him, the stock sold must be taken to be that first acquired by him. Whatever the intentions of the decedent may have been, I fail to see that they become a substitute for the records necessary to resolve all doubt. The burden of proving that the tax was not in fact due rests on the plaintiffs. Anderson v. Farmers' Loan & Trust Co. (C. C. A.) 241 F. 322. The courts have repeatedly sustained the regulations prescribed in accordance with Rev. St. § 161 (5 USCA § 22), and in no wise do the claims of the plaintiffs controvert successfully the validity of article 39, Regulations 45, or article 60 of Regulations 33.

In the view I take of the case, the issues must be decided in favor of the defendant, except as to so much of plaintiffs' claims as were conceded. Let an order be submitted accordingly.

